# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALBERT ADAMS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 09-2459 (RMU) |
| | : | |
| v. | : | Re Document Nos.: 4, 11 |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

### GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; DENYING AS MOOT THE DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## I. INTRODUCTION

This matter comes before the court on the defendant's motion to dismiss the second amended complaint. The plaintiff alleges that the defendant subjected him to disparate treatment on the basis of his disability and to a hostile work environment in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701 *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), D.C. CODE §§ 2-1401.01 *et seq.* For the reasons discussed herein, the court grants the defendant's motion to dismiss the plaintiff's DCHRA claims and his disparate treatment claims under the Rehabilitation Act. The court, however, denies the defendant's motion to dismiss the plaintiff's ADA claims and his hostile work environment claim brought under the Rehabilitation Act.

## II. FACTUAL & PROCEDURAL BACKGROUND[1]

The plaintiff, a Technology Specialist for the District of Columbia Department of Mental Health ("the Department"), suffered a stroke on May 8, 2005. 2d Am. Compl. ¶¶ 9-10, 14. After spending two months in a rehabilitation center, he asked the Department for permission to work from home. *Id*. ¶¶ 17-18. The plaintiff communicated this request to his supervisor and the Deputy Director of Finance and Administration.[2] *Id.* ¶ 18-19.

In September 2005, the plaintiff's request to work from home had still not been granted, prompting the plaintiff's spouse to contact the defendant's Equal Employment Opportunity ("EEO") Manager. *Id.* ¶ 25. The EEO Manager asked that the plaintiff initiate "the informal stage of an EEO complaint," and explained that "the District of Columbia had never encountered a request for a reasonable accommodation" and that there was "no system in place for a person in [the plaintiff's] situation." *Id.* ¶¶ 25-26. On February 5, 2006, the defendant's EEO Manager issued the plaintiff a notice of right to file a discrimination complaint, stating that the defendant was "unable to grant the accommodation [the plaintiff had] request[ed]." *Id.* ¶¶ 32-33.

On February 22, 2006, the plaintiff filed a formal administrative complaint with the District of Columbia Office of Human Rights ("DCOHR") and cross-filed it with the EEOC. *Id.* ¶ 34; Def.'s Mot. Ex. A., Pl.'s Opp'n at 21. In September and October 2006, the parties engaged

---

[1] For the purposes of this Rule 12(b)(6) motion, the court treats all of the plaintiff's factual allegations as true. *See Macharia v. United States*, 334 F.3d 61, 67 (D.C. Cir. 2003).

[2] At the defendant's request, the plaintiff submitted a letter from his doctor to the Department indicating that he was physically disabled due to having suffered a massive stroke and that while his recovery period was unknown, he "was unable to work in an office setting; . . . was able to work from home; . . . was able to use his computer with his right hand; and . . . was able to understand all that was required to do his job." 2d Am. Comp. ¶¶ 23-24.

in mediation, which resulted in a non-binding agreement that the plaintiff could work from home. 2d Am. Compl. ¶¶ 35, 37, 38, 40. In February 2007, the defendant installed a computer at the plaintiff's home, *id.* ¶ 43, but did not put him on the payroll or give him access to the Department's website. *Id.* ¶ 38. In April 2007, the plaintiff's supervisor told the plaintiff's spouse that the plaintiff was getting paid but was not performing his duties. *Id.* ¶ 22. During this time the parties continued to discuss a formal settlement, but no such agreement was ever reached, and the plaintiff decided to move forward with the DCOHR complaint process. *Id.* ¶ 52.

On January 1, 2008, the DCOHR issued a determination that there was probable cause to believe that the defendant had discriminated against the plaintiff by failing to provide him with a reasonable accommodation. *Id.* ¶¶ 52-53. The parties' mediation efforts continued until August 15, 2008, when the DCOHR issued a notice that the parties had failed to reach an agreement. Pl.'s Opp'n at 8. Eventually, the plaintiff requested that the DCOHR "transfer" the case to the Superior Court for the District of Columbia. *Id.* ¶ 7. The defendant took no position on the plaintiff's request to "transfer," but did "expressly reserve[] any and all of its legal rights and defenses under the law." Pl.'s Opp'n, Ex. 2 (Def.'s Non-Opposition to Pl.'s Mot. to Transfer). In response, the DCOHR administratively dismissed the plaintiff's complaint with prejudice on October 20, 2009. Pl.'s Opp'n, Ex. 3.

On November 9, 2009, the plaintiff filed a complaint in the Superior Court against the Department, the mayor and the attorney general of the District of Columbia. *Id.* at 17. An amended complaint was filed on December 21, 2009. *See* Notice of Removal, Ex. A. The case was subsequently removed to this court on December 31, 2009. *Id.* On January 7, 2010, the

defendants filed a motion to dismiss the plaintiff's amended complaint. *See generally* Def.'s Mot. to Dismiss Am. Compl. On February 1, 2010, the court granted the plaintiff leave to file a second amended complaint.[3] *See generally* Minute Order (Feb. 1, 2010). In his second amended complaint, the plaintiff alleges that the defendant discriminated against him on the basis of his disability and subjected him to a hostile work environment in violation of the Rehabilitation Act, the ADA and the DCHRA.[4] *See* 2d Am. Compl. ¶¶ 65-137.

On February 16, 2010, the defendant filed a motion to dismiss the second amended complaint.[5] *See* Def.'s Mot. to Dismiss 2d Am. Compl. ("Def.'s Mot."). With this motion now ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

---

[3] In his second amended complaint, the plaintiff asserts claims against the District of Columbia rather than the Department, the mayor and the attorney general of the District of Columbia. *See generally* 2d Am. Compl. The defendant, nonetheless, argues in its motion to dismiss the plaintiff's second amended complaint that the Department lacks the capacity to be sued. Def.'s Mot. to Dismiss 2d Am. Compl. at 20 ("Def.'s Mot."). Because the Department is no longer a named party in the second amended complaint, *see generally* 2d Am. Compl., the court denies as moot the defendant's motion to dismiss the second amended complaint insofar as it seeks the dismissal of all claims against the Department. *See* Def.'s Mot. at 20.

[4] Plaintiff appears to assert a claim of disparate treatment under Title VII based on his disability. *See generally* 2d Am. Comp. The defendant moves to dismiss the claim. Def.'s Mot. at 19. The plaintiff does not respond to the defendant's argument. *See generally* Pl.'s Opp'n. Because Title VII prohibits discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and because the plaintiff has failed to provide any opposition to the defendant's argument, the court grants the defendant's motion to dismiss those claims. *See Kissi v. Panzer*, 664 F. Supp. 2d 120, 123 (D.D.C. 2009) (stating that when an opposition fails to address the arguments made in a motion, a court may treat the motion as conceded).

[5] Because the plaintiff's filing of his second amended complaint on February 1, 2010 rendered his first amended complaint a nullity, *see Wultz v. Islamic Republic of Iran*, 2009 WL 4981537, at *1 (D.D.C. Dec. 14, 2009) (citing 6 FED. PRAC. & PROC. § 1476), the court denies as moot the defendant's motion to dismiss the plaintiff's first amended complaint, *id.* (citing *Myvett v. Williams*, 638 F. Supp. 2d 59, 62 n.1 (D.D.C. 2009)) (stating that "[a] motion to dismiss a complaint that has been subsequently amended is . . . moot"); *accord Mass. Mfg. Extension P'ship v. Locke*, 2010 WL 2679835, at *1 (D.D.C. July 7, 2010); *Gray v. D.C. Public Schs.*, 688 F. Supp. 2d 1, 6 (D.D.C. 2010).

# III. ANALYSIS

## A. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. Dist. of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred. *Id.*; *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985). If "no reasonable person could disagree on the

date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds. *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).

## B. The Plaintiff's Rehabilitation Act Claims

The plaintiff alleges that the defendant violated § 794 of the Rehabilitation Act by failing to reasonably accommodate his disability and fostering a hostile working environment.[6] 2d Am. Compl. ¶¶ 1, 65-97. The defendant moves to dismiss these claims, arguing that they are barred by the applicable statute of limitations. Def.'s Mot. at 9. More specifically, the defendant contends that because the plaintiff, as a non-federal employee, was not required to exhaust his administrative remedies prior to filing suit, the statute of limitations was not tolled while his claims were pending before the DCOHR and EEOC, and the applicable limitations period has now expired. *Id.* at 10-11.

The plaintiff disagrees, arguing that the statute of limitations was tolled because he was required to exhaust his administrative remedies before bringing suit under the Rehabilitation Act,

---

[6]     The plaintiff also alleges that the defendant violated § 791 of the Rehabilitation Act, which only applies to claims brought by employees of a federal "department, agency, and instrumentality." 29 U.S.C. § 791; *see also Taylor v. Small*, 350 F.3d 1286, 1291 (D.C. Cir. 2003) (holding that § 791 provides the exclusive avenue for relief under the Rehabilitation Act for federal employees). The plaintiff does not allege that the defendant is a federal "department, agency, or instrumentality," nor does he explain how § 791 would apply to the defendant. *See generally* 2d Am. Compl.; Pl.'s Opp'n. Accordingly, the court dismisses the plaintiff's claims brought under § 791 for failure to state a claim upon which relief can be granted. *See Stewart v. Dist. of Columbia*, 2006 WL 626921, at *8 (D.D.C. Mar. 12, 2006) (stating that a mental health facility operated by the District of Columbia Department of Mental Health is "subject to the strictures" of § 794, but not § 791); *cf. Freed v. Consol. Rail Corp.*, 201 F.3d 188, 192 (3d Cir. 2000) (stating that a recipient of federal funding cannot be sued for a violation of § 791).

Pl.'s Opp'n at 12-13, and because he filed a charge of discrimination with the DCOHR, *id.* at

13-14. Additionally, the plaintiff contends that his hostile work environment claim is a

continuing violation and should not be dismissed based on the statute of limitations. *Id.* at 20-21.

Finally, the plaintiff argues that even if his Rehabilitation Act claims are untimely, the defendant

waived that defense when it took no position on the plaintiff's motion to transfer the proceedings

to the Superior Court. *Id.* at 16.

### 1. The Plaintiff Was Not Required to Exhaust His Administrative Remedies Under § 794 of the Rehabilitation Act

Section 794 of the Rehabilitation Act prohibits "discrimination under any program or

activity receiving Federal financial assistance or under any program or activity conducted by any

executive agency." 29 U.S.C. § 794. Whether a plaintiff is required to exhaust his

administrative remedies prior to commencing suit under § 794 remains an unsettled question in

this jurisdiction. *See Stewart v. Dist. of Columbia*, 2006 WL 626921, at *10 (D.D.C. Mar. 12,

2006). Pursuant to § 794a(a)(2), the "remedies, procedures, and rights set forth in title VI of the

Civil Rights Act of 1964" are available to any person aggrieved under § 794. 29 U.S.C. §

794a(a)(2) (emphasis added). Interpreting this provision, this Circuit held that because § 794 of

the Rehabilitation Act incorporates the "procedures" from Title VI, a plaintiff proceeding under §

794 was not required to exhaust administrative remedies. *Milbert v. Koop*, 830 F.2d 354, 356

(D.C. Cir. 1987). In 1992, however, Congress amended § 794 of the Rehabilitation Act, *see* Pub.

L. No. 102-569, 106 Stat. 4344, to state that "[t]he *standards* used to determine whether [§ 794]

has been violated in a complaint . . . shall be the *standards* applied under title I of the [ADA] . . .

and the provisions of [§§ 12201 to 12204 and 12210], of the [ADA]."[7] 29 U.S.C. § 794(d) (emphasis added).

Since this amendment took effect, courts in this district have struggled to determine what types of "standards" should be borrowed from the ADA when evaluating a claim brought under § 794 of the Rehabilitation Act. Some courts have interpreted the "standards" of the ADA to include the "powers, remedies, and procedures" that the ADA incorporates from Title VII, including Title VII's requirement that a plaintiff exhaust his or her administrative remedies. *See Turner v. Dist. of Columbia*, 383 F. Supp. 2d 157, 176 (D.D.C. 2005) (stating that because the Rehabilitation Act incorporates the "standards" of the ADA, which incorporates the "powers, remedies, and procedures set forth in [Title VII]," the Rehabilitation Act also incorporates the "powers, remedies, and procedures" of Title VII); *see also Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 75 (D.D.C. 2009) (noting that plaintiffs suing a non-federal employer under § 794 of Rehabilitation Act, "like those under Title VII, must exhaust their administrative remedies"); *Davis v. Dist. of Columbia*, Civ. No. 02-2260 (D.D.C. August 7, 2003) (Mem. Op.) (explaining that the 1992 amendments to the Rehabilitation Act require that a plaintiff exhaust administrative remedies prior to filing an employment discrimination claim under §794).

Meanwhile, other courts in this district have limited the "standards" that § 794

---

[7] Thus § 794(d) incorporates from the ADA provisions governing the general construction of the ADA (§12201), the state's immunity under the ADA (§12202), the prohibition against retaliation against and coercion of an individual with disabilities enforcing his rights under the ADA (§12203), the promulgation of guidelines to ensure that architectural structures and transportation are in compliance with the ADA (§12204) and the application of the ADA to illegal drug users (§12210).

incorporates from the ADA to include only standards of liability.  *Stewart v. Dist. of Columbia*, 2006 WL 626921, at *10 (D.D.C. Mar. 12, 2006) (stating that "by incorporating the 'standards' of Title I [of the ADA] into [§ 794], Congress was simply ensuring that all employees governed by federal disability anti-discrimination law were subjected to the same liability requirements"); *see also Gordon v. Dist. of Columbia*, 605 F. Supp. 2d 239, 244-45 (D.D.C. 2009) (acknowledging the "disagreement about the appropriate limitations period aris[ing] from tension between two sections of the [Rehabilitation Act]" and agreeing with *Stewart*); *Jones v. Univ. of Dist. of Columbia*, 505 F. Supp. 2d 78, 85 (D.D.C. 2007) (noting that § 794 of the Rehabilitation Act "provides remedies set forth in Title VI, which does not explicitly require the exhaustion of remedies").  The courts in these cases reasoned that had Congress intended to amend the Rehabilitation Act so as to incorporate the "powers, remedies, and procedures" of the ADA, it would have done so expressly.  *See, e.g.*, *Stewart*, 2006 WL 626921, at *10 (explaining that the use of the term "standards" instead of "powers, remedies, and procedures" indicates Congress' intent to "circumscribe the incorporation of the ADA").  Accordingly, these courts have concluded that the exhaustion of remedies is not required for claims arising under §704 of the Rehabilitation Act.  *See*, *e.g.*, *Stewart*, 2006 WL 626921, at *11.

This court agrees with the conclusion of those courts in this district as well as other Circuit courts[8] that held that § 794 of the Rehabilitation Act incorporates Title VI's "remedies, procedures, and rights," including its statute of limitations and exhaustion requirements. The court is particularly persuaded by the fact that the Rehabilitation Act explicitly incorporates Title VI's "remedies, procedures, and rights" into § 794, rather than those of Title VII. 29 U.S.C. § 794a(a)(2); *see also Gordon*, 605 F. Supp. 2d at 245 (noting that Title VI is expressly incorporated in the Rehabilitation Act). [9] Accordingly, the ADA's exhaustion requirement does not apply to the Rehabilitation Act and the plaintiff was not required to exhaust his administrative remedies for his Rehabilitation Act claims.

A limitations period does not toll when a plaintiff is not required but chooses to exhaust his administrative remedies before pursuing a claim in court. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975) (holding that the timely filing of an EEOC charge did not toll the running of the statute of limitations for a claim brought pursuant to 42 U.S.C. § 1981); *see also Carter v. Dist. of Columbia*, 14 F. Supp. 2d 97, 102 (D.D.C. 1998) (holding that the

[8]     Although this Circuit has not addressed the issue, other Circuits have held that a plaintiff pursuing a claim under § 794 of the Rehabilitation Act need not show exhaustion of administrative remedies. *See Freed v. Conso. Rail Corp.*, 201 F.3d 188, 194 (3d Cir. 2000) (noting that "[e]very court of appeals to have addressed this question has already held that plaintiffs suing private recipients of federal funds under [§ 794 of the Rehabilitation Act] do not need to exhaust Title VI administrative remedies" (citations omitted)).

[9]     Under Title VI, exhaustion is not required. *See N.C. Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 21 (1986) (recognizing that plaintiffs pursuing claims under Title VI are "unfettered by a requirement that they exhaust administrative remedies"); *Jones v. Dist. of Columbia*, 505 F. Supp. 2d 78, 85-86 (D.D.C. 2007) (noting "§ 794 of the Rehabilitation Act proscribes discrimination by executive agencies and federally funded entities and provides remedies set forth in Title VI, which does not explicitly require the exhaustion of administrative remedies").

statute of limitations for the plaintiff's claim that did not require exhaustion did not toll during the pendency of administrative action on another claim); *Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, 2007 WL 121431, at *6 & n.17 (E.D.N.Y. Jan. 12, 2007) (declining to toll the statute of limitations based on the plaintiff's EEOC filing because the plaintiff's state law claim did not require exhaustion); *cf. Intn'l Union of Electrical v. Robbins & Myers, Inc.*, 429 U.S. 229, 237 (1976) (noting that Supreme Court rulings have "virtually foreclosed" "arguments for tolling the statutory period for filing a claim with the EEOC during the pendency of grievance or arbitration procedures" (citations omitted )). Thus, the plaintiff's pursuit of administrative remedies did not toll the statute of limitations for his Rehabilitation Act claims.

### 2. The Plaintiff's DCOHR Complaint Did Not Toll the Statute of Limitations

The plaintiff argues, alternatively, that the statue of limitations on his Rehabilitation Act claims was tolled by his filing of a charge of discrimination with the DCOHR. Pl.'s Opp'n at 13. In support of this proposition the plaintiff cites the DCHRA, which states that "[t]he timely filing of a complaint with [the DCOHR] . . . shall toll the running of the statute of limitations while the complaint is pending." D.C. CODE § 2-1403.16(a).

The plaintiff's reliance on this provision of the DCHRA, however, is misplaced. Although the DCHRA tolls the "one-year statute of limitations for filing a claim *under the DCHRA*," *Ellis*, 631 F. Supp. 2d at 78 (emphasis added), it does not expressly toll the statute of limitations applicable to claims under the Rehabilitation Act, *see* D.C. CODE § 2-1403.16(a). Moreover, the Supreme Court has held that the statute of limitations continues to run on a claim that requires no administrative exhaustion while a plaintiff pursues administrative remedies on a

separate claim that does have such a requirement. *Johnson*, 421 U.S. at 461 (reasoning that the administrative and litigatory remedies "although related, and although directed to most of the same ends, are separate, distinct, and independent"); *see also Carter*, 14 F. Supp. 2d at 102 (D.D.C. 1998). Accordingly, the statute of limitations for the plaintiff's claims under the Rehabilitation Act was not tolled during the pendency of the administrative proceeding before the DCOHR.

### 3. The Defendant Did Not Waive Its Statute of Limitations Defense

The plaintiff also argues that the defendant waived its right to assert a statute of limitations defense to his Rehabilitation Act claims by taking "no position" on the plaintiff's request to transfer the administrative action to the Superior Court. Pl.'s Opp'n at 16. As the defendant notes in its reply, however, the plaintiff provides no relevant support for his contention that a statute of limitations defense is waived under such circumstances. Def.'s Reply at 12-13. The defendant, moreover, "expressly reserve[d] any and all of its legal rights and defenses under the law" in its concession to the plaintiff's motion to transfer. Pl.'s Opp'n, Ex. 2 (Def.'s Non-Opp'n to Pl.' s Mot. to Transfer); *see also* Def.'s Reply at 12-13. Because the defendant reserved all "rights and defenses" and did not delay in asserting the statute of limitations defense, the court rejects the plaintiff's assertion that the defendant waived its statute of limitations defense prior to the filing of this lawsuit.

### 4. The Plaintiff's Rehabilitation Act Claims for Disparate Treatment Are Time-Barred

Having determined that the statute of limitations was not tolled and that it was not waived as a defense, the court turns to whether the applicable statute of limitations bars the plaintiff's

Rehabilitation Act claims. Although the Rehabilitation Act does not expressly include its own statute of limitations, *see generally* 29 U.S.C. §§ 791 *et seq.*, the court, as explained previously, applies Title VI's procedural limitations, *see supra* Part III.B.1. Title VI, however, does not have a statute of limitations, and thus this court draws the statute of limitations from an analogous state statute. *See N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (stating that it is settled law that state statutes supply the periods of limitations "for federal causes of action when the federal legislation made no provision"). Courts in this district have applied the District of Columbia's three-year limitations period, which is applicable to personal injury claims, to claims under § 794. *Stewart*, 2006 WL 626921, at *11 (applying D.C. Code § 12-301); *accord Gordon*, 605 F. Supp. 2d at 245.

Here, the plaintiff's limitation period began at the latest on February 6, 2006, when he received notice by the Department's EEO Manager that the Department had denied his request to work from home. *See* 2d Am. Compl. ¶¶ 32-34; *see also Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (stating that in determining the start of a limitations period, the "proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful"). Because the plaintiff commenced this lawsuit on November 9, 2009, outside the three-year statute of limitations, the plaintiff's claims of disparate treatment under the Rehabilitation Act are time-barred.

**5. The Plaintiff's Claim for Hostile Work Environment Under the Rehabilitation Act Is Not Time-Barred by the Statute of Limitations**

The defendant argues that the plaintiff's hostile work environment claim under Rehabilitation Act was filed outside of the limitations period. Def.'s Mot. at 9. The plaintiff counters that the statute of limitations does not bar his hostile work environment claim because he was the victim of the defendant's "continuing violation" in creating a hostile work environment, even while he was on leave. Pl.'s Opp'n at 20-21. The defendant does not address this argument in its reply. *See generally* Def.'s Reply.

Hostile work environment claims differ from "discrete discriminatory acts," such as terminations and failures to promote, because "[t]heir very nature involves repeat conduct." *Singletary v. Dist. of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). For that reason, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of hostile environment may be considered by a court for the purpose of determining liability." *Morgan*, 536 U.S. at 117. Moreover, a contributing act can occur when the plaintiff is on leave. *See Greer v. Paulson*, 505 F.3d 1306, 1314 (D.C. Cir. 2007) (stating that "harassment and hostile incidents may occur by telephone or in person during an employee's communication with her employer while she is not working or away from the office").

Here, the plaintiff alleges that the defendant subjected him to a hostile work environment when the defendant's employees told him that (1) the new supervisor "did not know if he needed my position"; (2) the District of Columbia "does not have a setup for people to work from

home"; (3) he had been "taking a paycheck without having done any work"; and (4) he should resign. Pl.'s Opp'n at 19-21 (quoting Def.'s Mot., Ex A. ("Charge of Discrimination")). At least one of these alleged incidents occurred as recently as April 10, 2007, less than three years before the plaintiff filed suit on November 19, 2009. *See* 2d Am. Compl. ¶ 44 (describing that on April 10, 2007, the defendant falsely accused the plaintiff of "taking a paycheck without having done any work"). Because the court may only grant a motion to dismiss on statute of limitations grounds if the complaint on its face is conclusively time-barred, *Firestone*, 76 F.3d at 1209, the court declines at this juncture to dismiss the plaintiff's hostile work environment claim under the Rehabilitation Act. *See Brady v. Livingood*, 360 F. Supp. 2d 94, 102 n.6 (D.D.C. 2004) (stating that "whether the alleged discriminatory acts pleaded by the plaintiff in support of this claim are sufficiently related to be considered part of a continuing violation is a disputed issue of fact not appropriated decided upon a motion to dismiss"); *Nat'l Fair Hous. Alliance, Inc. v. Prudential Ins. Co. of Am.*, 219 F. Supp. 2d 104, 105 (D.D.C. 2002) (denying a motion to dismiss a hostile work environment claim before "the development of a factual record").

### C. The Plaintiff's ADA Claims

**1. Legal Standard for a Motion to Dismiss for Failure to Exhaust Administrative Remedies**

In actions brought under Title VII and the ADA, a court has authority over only those claims (1) that are contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) for which the plaintiff has exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). It is the defendant's

burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it"). Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12 (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Hansen v. Billington*, 644 F. Supp. 2d 97, 105 (D.D.C. 2009) (dismissing an ADA claim because the plaintiff failed to exhaust administrative remedies)*; Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing a Title VII claim when the plaintiff failed to exhaust administrative remedies).

### 2. The Court Denies the Defendant's Motion to Dismiss the Plaintiff's ADA Claims

#### a. The Plaintiff Exhausted His Administrative Remedies for His ADA Claims

The defendant argues that the plaintiff's ADA claims should be dismissed because the plaintiff failed to obtain a right-to-sue notice from the EEOC, which it asserts is a "condition precedent" to suit. Def.'s Mot. at 11-12. The plaintiff counters that he did exhaust his administrative remedies because his DCOHR complaint, in which he alleged ADA violations, was cross-filed with the EEOC, Pl.'s Opp'n at 21, and because his EEO Manager issued a "Notice of Right to file a Discrimination Complaint," on February 5, 2006, *id.*; 2d Am. Compl. ¶¶ 4, 32.

A plaintiff asserting claims under the ADA must exhaust his administrative remedies by filing a complaint with the EEOC before bringing suit in court. *See* 42 U.S.C. § 12117 (incorporating the enforcement provisions of Title VII). Ordinarily, as proof of such exhaustion of administrative remedies, a plaintiff would receive a right-to-sue letter from the EEOC, indicating either the EEOC's dismissal of the case or its inability to bring a civil action within 180 days of the plaintiff's EEOC charge. 42 U.S.C. § 2000e-5(f)(1); *see also Park*, 71 F.3d at 907 (stating that "[o]nly after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself"); 29 C.F.R. § 1601.28(a)(1) (stating that the EEOC shall issue a right-to-sue notice, upon request, "at any time after the expiration of [180] days from the date of filing of the charge").

In lieu of his EEOC right-to-sue letter, the plaintiff relies on a "Notice of Right to file a Discrimination Complaint" that was issued by the plaintiff's EEO Manager *before* the plaintiff filed his charge of discrimination with DCOHR and EEOC. Def.'s Mot., Ex. A. The plaintiff did, however, receive a dismissal order from the DCOHR, indicating that the plaintiff "must file the case in a court of competent jurisdiction." Pl.'s Opp'n, Ex. 3.

This Circuit has not addressed whether a DCOHR-issued dismissal order is the equivalent of an EEOC right-to-sue notice for purposes of procedural exhaustion of administrative remedies. Other courts have held, however, that a letter from a state or local agency is sufficient to satisfy an exhaustion of administrative remedies requirement under federal law. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008) (holding that if "a plaintiff is entitled

to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency"); *Ortiz v. Prudential Ins. Co.*, 94 F. Supp. 2d 225, 231 (D. Conn. 2000) (determining that the omission of a right-to-sue notice from the EEOC was not grounds for dismissal when the plaintiff had pursued administrative relief through a state agency that had a work-sharing agreement with the EEOC and received a "release-to-sue" letter from that state agency); *see also Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982) (holding that the receipt of a right-to-sue notice is unnecessary, because "it is entitlement to a 'right to sue' notice, rather than its actual issuance or receipt, which is a prerequisite"); *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 139 (D.D.C. 2004) (stating that the "plaintiff was free to come to Court once 180 days had elapsed from the filing of her administrative complaint . . . [and] did not have to wait until the agency 'officially' decided or dismissed" the administrative complaint).

Allowing the plaintiff to effectively substitute an EEOC right-to-sue notice with a DCOHR dismissal-order is also consistent with this Circuit's cautionary advice not to allow "an overly technical approach" in construing exhaustion requirements to "improperly impede the goal of making federal employment free from proscribed discrimination," *Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir. 1985) (explaining that the administrative charge requirement should not be construed to place a heavy technical burden on "individuals untrained in negotiating procedural labyrinths"); *see also Williams v. Wash. Metro Area Transit. Auth.*, 721 F.2d 1412, 1418 (D.C. Cir. 1982) (discussing this Circuit's "general belief that the application of Title VII's procedural requirements be 'animated by the broad humanitarian and remedial purposes underlying the

federal proscription of employment discrimination'" (quoting *Coles v. Penny*, 531 F.2d 609, 616 (D.C. Cir. 1976))); *Lamont v. Forman Brothers, Inc.*, 410 F. Supp. 912, 916 (D.D.C. 1976) (stating that "[c]ourts have liberally construed the filing requirements of Title VII, especially in cases where filing irregularities arose in connection with deferral by the EEOC to state agencies"); *see also Park*, 71 F.3d at 907 (stating that the primary goal of the administrative charge requirement was to give "the charged party notice of the claim [and to] 'narrow[] the issues for prompt adjudication and decision'" (quoting *Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429, 472 n.325 (D.C. Cir. 1976))), and the general goal that the worksharing agreement between DCOHR and EEOC[10] should "ease charges through the remedial system, [and] not [] erect hurdles [that] claimants must decipher and overcome," *Schuler*, 514 F.3d at 1374 (discussing worksharing agreement between DCOHR and EEOC).

Given the work-sharing arrangement between the DCOHR and the EEOC and the absence of any prejudice to the defendant, the court determines that requiring the plaintiff to receive a right-to-sue notice from the EEOC, when he has otherwise exhausted all of his administrative remedies and received a dismissal notice from the DCOHR, "would serve no purpose other than the creation of an additional procedural technicality." *Love v. Pullman Co.*, 404 U.S. 522, 526 (1972). Accordingly, the court denies the defendant's motion to dismiss the plaintiff's ADA claims for failure to exhaust administrative remedies.

---

[10]    Pursuant to a worksharing agreement, the DCOHR and EEOC "process all Title VII, ADA and ADEA charges that they originally receive." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1373 (D.C. Cir. 2008). The filing of a formal charge with the DCOHR satisfies any filing requirement with the EEOC, and vice-versa. *Cruz-Packer v. Dist. of Columbia*, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (citing DCHRA and EEOC Worksharing Agreement).

**b. The Court Denies the Defendant's Motion to Dismiss the Plaintiff's Hostile Work Environment Claim Under the ADA for Failure to Exhaust Administrative Remedies**

The defendant argues that the plaintiff did not include an ADA hostile work environment claim in his DCOHR charge of discrimination, and that, therefore, that claim should be dismissed for failure to exhaust. Def.'s Mot. at 12-13. The plaintiff asserts that his administrative charge contained facts that sufficiently alleged a hostile work environment. Pl.'s Opp'n at 19-20.

A work environment is hostile when "offensive conduct 'permeates [the workplace] with discriminatory intimidation, ridicule, and insult that [is] sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment.'" *Barbour v. Browner*, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)). In the ADA context, the Circuit has "assume[d]," but not held that

> if working conditions inflict pain or hardship on a disabled employee, the employer fails to modify the conditions upon the employee's demand, and the employee simply bears the conditions, this could amount to a denial of reasonable accommodation, despite there being no job loss, pay loss, transfer, demotion, denial of advancement, or other adverse personnel action. Such a scenario might be viewed as the ADA equivalent of the hostile working environment claim cognizable under other discrimination laws.

*Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1099 (D.C. Cir. 1997).

Furthermore, a plaintiff may adequately exhaust administrative remedies without specifically alleging a hostile work environment claim in his administrative complaint so long as the hostile work environment claim "grow[s] out of" the allegations asserted in the

administrative complaint.[11]  *Roberson v. Snow*, 404 F. Supp. 2d 79, 96 (D.D.C. 2005) (citing

*Jones v. Billington*, 12 F. Supp. 2d 1, 7 (D.D.C. 1997)).  A complaint must "contain claims or

factual allegations that could reasonably be expected upon investigation to lead to a hostile work

environment claim."  *Park*, 71 F.3d at 908; *see also Payne v. Salazar*, 2010 WL 3463394, at *7

(D.C. Cir. September 7, 2010) (holding that appellant's second retaliation claim was barred for

failure to exhaust because it clearly could not have arisen from the administrative investigation of

the appellant's first retaliation claim); *Roberson*, 404 F. Supp. 2d at 95-96 (concluding that

although the plaintiff did not "specifically articulate" a hostile work environment claim, the

plaintiff's administrative complaint adequately pleaded a potential hostile work environment

claim because the hostile work environment claim arose from the original allegations of

discrimination); *Jones*, 12 F. Supp. 2d at 7 (determining that where the plaintiff's administrative

charge alleged sufficient facts for a discrimination claim, the same set of facts  sufficiently

alluded to a claim of hostile work environment); *Bell v. Gonzales*, 398 F. Supp. 2d 78, 84-85

(D.D.C. 2005) (stating that exhaustion requirement was satisfied even though the administrative

charge did not include a hostile work environment claim because it related to the conduct alleged

in the charge).

---

[11]    The exhaustion of administrative remedies requirement is less stringent for hostile work
environment claims than for discrete claims of discrimination or retaliation.  *See Nat'l R.R.
Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (concluding that a hostile work
environment claim "will not be time barred so long as all acts which constitute the claim are part
of the same unlawful employment practice and at least one act falls within the time period"); *see
also Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 107 n.10 (D.D.C. 2005) (recognizing that "[u]nlike
discrete claims of discrimination and retaliation, the exhaustion requirement on a hostile work
environment claim is less stringent . . . [and the p]laintiff need only have filed an EEOC complaint
alleging some of the claims that comprise the hostile work environment claim").

Here, the plaintiff alleged in his DCOHR charge of discrimination that the defendant discriminated against him on the basis of his disability by failing to have a procedure in place to reasonably accommodate his disability. *See* Charge of Discrimination. The plaintiff also alleges in his charge of discrimination that the defendant, through its employees, told him that (1) the new supervisor "did not know if he needed my position"; (2) if he could not drive or take public transportation then he "needed to find another means of transportation to get to work;" (3) the District of Columbia "does not have a setup for people to work from home"; (4) he had been "taking a paycheck without having done any work;" and (5) he should resign. *Id.*; *see also* Pl.'s Opp'n at 19-21.

Although the plaintiff did not specifically allege a hostile work environment claim in his administrative charge, it cannot be said that the plaintiff's DCOHR charge "contain[s] no claims or factual allegations that could reasonably be expected upon investigation to lead to a hostile work environment claim." *Park*, 71 F.3d at 908; *see also Morgan*, 536 U.S. at 115 (explaining that a hostile work environment claim may composed of single acts of harassment that are not actionable on their own). Stated otherwise, the administrative charge arguably contains acts which "contribute" to the hostile work environment claim. *Morgan*, 536 U.S. at 115 (holding "the entire period of the hostile work environment may be considered by a court for the purposes of determining liability" as long as "an act contributing to the claim occurs within the filing period"). Thus, the court holds that the plaintiff has exhausted his administrative remedies sufficiently to assert a hostile work environment claim under the ADA, and denies the defendant's motion to dismiss the hostile work environment claim for failure to exhaust

administrative remedies.

### D. The Court Grants the Defendant's Motion to Dismiss the Plaintiff's DCHRA Claims

The defendant argues that the plaintiff's DCHRA claims should be dismissed because the plaintiff forfeited his right to commence a civil action when he elected to pursue an administrative remedy.[12] Def.'s Mot. at 15. The plaintiff counters that his election to file an administrative complaint does not foreclose his right to pursue a judicial remedy. Pl.'s Opp'n at 27-28.

Pursuant to D.C. Code § 2-1403.16(a),[13] a plaintiff is required "to choose between an administrative or a judicial forum in which to pursue their claims."[14] *Carter v. Dist. of Columbia*, 980 A.2d 1217, 1223 (D.C. 2009) (explaining that "[t]he jurisdiction of the court and OHR are mutually exclusive in the first instance" (quoting *Brown v. Capitol Hill Club*, 425 A.2d

---

[12] The defendant also argues that, prior to initiating his claim in court, the plaintiff was required but failed to provide proper notice to the District of Columbia. Def.'s Mot. at 14; Def.'s Reply at 8-9. The court need not reach this argument because it dismisses the plaintiff's DCHRA claims based on other grounds as described herein.

[13] Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction . . . unless such person has filed a complaint hereunder; provided, that where the [DCOHR] has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed.

D.C. CODE § 2-1403.16(a).

[14] When interpreting a District of Columbia statute, this court defers to the D.C. Court of Appeals. *See United States v. Edmond*, 924 F.2d 261, 264 (D.C. Cir. 1991) (stating that statutory interpretations by the D.C. Court of Appeals are to be treated "as if they were rendered by the highest court of a State on questions of state law, with the exception that the Court will interpose its own judgment when it detects an egregious error").

1309, 1311 (D.C. 1981))).  A plaintiff, however, may commence an action in court, notwithstanding his or her prior filing of a complaint with the DCOHR, if either: (1) the plaintiff withdraws the DCOHR complaint before the DCOHR renders a judgment on it; or (2) the DCOHR dismisses the complaint for "administrative convenience."[15]  *Id.* (citing D.C. CODE § 2-1403.16(a)).

In order to successfully withdraw a complaint before the DCOHR, and thus, preserve the right to bring the same claim in court, a complainant must request withdrawal "prior to the completion of the [DCOHR's] investigation and findings."  D.C. CODE § 2-1403.04.  More specifically, a plaintiff is required to withdraw his request prior to the DCOHR's determination of that probable cause exists.  *See Anderson v. U.S. Safe Deposit Co.*, 552 A.2d 859, 863 (D.C. 1989) (affirming the dismissal of a claim under the DCHRA because the plaintiff failed to withdraw a complaint prior to the DCOHR's issuance of a probable cause determination); *Brown*, 425 A.2d at 1312 (dismissing a DCHRA claim asserted by a plaintiff who had already received notice that the DCOHR had found no probable cause).  The plaintiff acknowledges that he received a probable cause determination from the DCOHR prior to withdrawing his complaint with the DCOHR, 2d Am. Compl. ¶¶ 6-7, and thus, he did not successfully withdraw his DCHRA complaint.

---

[15]     The Circuit has stated that the "'key element' of a dismissal for administrative convenience is the agency's exercise of prosecutorial discretion not to commit resources to the claim, for example because the EEOC will handle it, or because [DC]OHR concludes that 'the complainant can be made whole' without the need for formal proceedings."  *Carter*, 980 A.2d at 1224 (quoting *Timus v. Dist. of Columbia Dep't of Human Rights*, 633 A.2d 751, 760 (D.C. 1993)).  Here, the evidence does not suggest that DCOHR dismissed the complaint based on "prosecutorial discretion," nor does the plaintiff argue that the DCOHR dismissed for administrative convenience.

The plaintiff argues that his failure to withdraw his DCOHR complaint should be equitably excused because the defendant appeared to act in bad faith during mediation. Pl.'s Opp'n at 30. "Federal courts have typically extended equitable relief only sparingly," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *see also Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988) (stating that equitable excuse "will be exercised only in extraordinary and carefully circumscribed instances"), and such relief generally should not apply "where the claimant failed to exercise due diligence in preserving his legal rights," *Irwin*, 498 U.S. at 96. For instance, in the statute of limitations context, "[e]quitable estoppel . . . 'comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.'" *Smith-Haynie*, 155 F.3d at 580 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th 1990)).

The plaintiff here does not allege that the defendant took any "active steps" to prevent him from withdrawing his DCOHR complaint. *See generally* 2d Am. Compl.; Pl's Opp'n. Instead, the record supports that the plaintiff voluntarily withdrew his administrative charge with the DCOHR. 2d Am. Compl. ¶ 7; Pl's Opp'n at 9. In short, there is nothing extraordinary about the plaintiff's circumstances that would merit equitable relief. Thus, the court grants the defendant's motion to dismiss the plaintiff's claims under the DCHRA.

### E. The Court Grants the Defendant's Motion to Dismiss the Plaintiff's Requests for Punitive Damages

The defendant argues that, as a matter of law, the plaintiff cannot recover punitive damages from the District of Columbia or its agents, and asks that the court dismiss any claims

against the defendant insofar as they request punitive damages. Def.'s Mot. at 21-22. The plaintiff does not provide any arguments in opposition to this argument. *See generally* Pl.'s Opp'n.

Absent "extraordinary circumstances," the District of Columbia is immune to punitive damages claims. *Hunter v. Dist. of Columbia*, 384 F. Supp. 2d 257, 262 n.4 (D.D.C. 2005) (citing *Smith v. Dist. of Columbia*, 336 A.2d 831, 832 (D.C. 1975)); *Smith*, 336 A.2d at 832 (adopting in the District of Columbia the "general rule [that] there can be no recovery of punitive damages against a municipality absent a statute authorizing it"). "[E]xtraordinary circumstances" may exist, for example, "where a jurisdiction's taxpayers are directly responsible for perpetrating the policies that caused the plaintiff's injuries [or] where a municipality or its policymakers have intentionally adopted the unconstitutional policy that caused the damages in question." *Daskalea v. Dist. of Columbia*, 227 F.3d 433, 447 (D.D.C. 2000).

Here, the plaintiff makes no allegation that "extraordinary circumstances" exist; *see generally* 2d Am. Compl., indeed, the plaintiff makes no argument at all concerning this issue. *See generally* Pl.'s Opp'n. Furthermore, none of the plaintiff's allegations in the second amended complaint approach such "extraordinary circumstances" as those described by the Circuit. *See generally* 2d Am. Compl.; *see also Butera v. Dist. of Columbia*, 235 F.3d 637, 658 (D.C. Cir. 2001) (concluding that even where the plaintiffs may have shown official acceptance of wrongdoing, the plaintiffs failed to establish extraordinary circumstances because they did not show that the District of Columbia policymakers "intentionally adopted an unconstitutional policy"). Accordingly, the court grants the defendant's motion to dismiss the plaintiff's claims

for punitive damages against the defendant. *See Kissi v. Panzer*, 664 F. Supp. 2d 120, 123 (D.D.C. 2009) (stating that when the opposition fails to address the defendant's arguments, a court may treat the motion as conceded).

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion to dismiss. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of September, 2010.

RICARDO M. URBINA
United States District Judge